IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| MICHELY PAIVA ALVES, § | |
| § | |
| Petitioner, § | |
| § | |
| v. § | CAUSE NO. EP-25-CV-306-KC |
| § | |
| U.S. DEPARTMENT OF JUSTICE, § | |
| et al., § | |
| § | |
| Respondents. § | |

### ORDER SETTING HEARING & PREVENTING PETITIONER'S REMOVAL FROM THE COUNTRY & DISTRICT

On this day, the Court considered the case. Petitioner Michely Paiva Alves filed a Petition for a Writ of Habeas Corpus and Petition for Writ of Mandamus ("Petition"), ECF No. 1. In answer to the Court's Show Cause Order, ECF No. 2, Respondents filed their Response, ECF No. 8, in opposition to Alves' Petition. For the following reasons, the Court sets this case for a **HEARING** on the Petition and **ORDERS** that Alves may not be transferred from the Western District of Texas or removed from the United States until the Court orders otherwise.

I.  **BACKGROUND**

Alves entered the United States on January 21, 2025, and was immediately placed in U.S. Immigration and Customs Enforcement ("ICE") custody at the El Paso Processing Center. Pet ¶ 16. She has remained in continuous detention there for nearly eight months. *Id.* Initially, Alves was placed in expedited removal proceedings, under which she was to be removed promptly without review by an Immigration Judge. *Id.*

Petitioner further alleges that, under "the Biden-era Asylum Officer Rule," she was granted withholding of removal under the Convention Against Torture ("CAT withholding") by

an asylum officer around February 20, 2025. Pet. ¶¶ 16, 18. Nevertheless, she remained in detention and was "recently"—as of August 11—"informed by a deportation officer that her grant of relief would be revoked due to 'policy changes.'" *Id.* ¶ 19. Petitioner alleges that no authority permits such revocation. *Id.* ¶ 20.

Respondents do not contest that Alves has been detained since January or that she was initially placed into expedited removal proceedings. *See generally* Resp. In most other respects, however, Respondents dispute the history of her immigration proceedings. Respondents claim that "[t]here was never a grant of any type of relief from removal awarded to her." Mot. Extend ¶ 9, ECF No. 5; *see also id.* ¶ 3 ("She does not have an order granting her any relief to withhold her removal under the Convention Against Torture (CAT)."). Instead, at some point, Alves had a credible fear screening, where an asylum officer determined that she had a potential asylum claim. Resp. Ex. A ("Notice to Appear") 1, ECF No. 8-1. Following this screening, Alves was no longer subject to expedited removal. *Id.* On August 27, 2025, over two weeks after she filed this Petition, Alves received a Notice to Appear before an immigration judge for full removal proceedings under section 240 of the Immigration and Nationality Act ("INA"). Notice to Appear 1–4. Alves is scheduled for a hearing with an Immigration Judge on September 18, 2025. Resp. 4. On August 11, the Court received Alves' pro se Petition, requesting that the Court (1) find her detention unlawful, (2) require Respondents to hold a bond hearing, (3) order Respondents not to transfer her out of the Western District of Texas, and (4) stay removal from the United States pending the resolution of this Petition. Pet. 14–15. The Court ordered Respondents to show cause why the Petition should not be granted. August 18, 2025, Order, ECF No. 2.

2

In turn, Respondents argue that Alves' Petition should be denied on three grounds. First, since Alves is now under full removal proceedings, rather than expedited removal, her Petition is moot. Resp. 8. Second, Respondents argue that the Court lacks jurisdiction to consider Alves' claim because she is subject to mandatory detention under 8 U.S.C. § 1225(b) and is not entitled to a bond hearing. *Id.* at 3, 5–6. Lastly, Respondents argue that since Alves is not entitled to a bond hearing by statute, this case does not present any due process concerns. *Id.* at 3, 6.

## II.   DISCUSSION

### A.   Whether to Hold a Hearing

Petitioner asks the Court for habeas corpus relief. *See generally* Pet. The Court must hold an evidentiary hearing on a habeas petition "unless it appears from the application" that Petitioner is not entitled to relief, or "the application for the writ and the return present only issues of law." *See* 28 U.S.C. § 2243.

#### 1.   CAT Withholding

As an initial matter, Petitioner claims to have been granted CAT withholding, only to have it unlawfully revoked. Pet. ¶¶ 16, 18, 20. Respondents deny that she was ever granted withholding, and do not engage with her argument that they would be without authority to rescind it. Mot. Extend ¶¶ 3, 9. If Petitioner had a formal grant of permission to remain in the country that was summarily revoked, it would raise due process concerns. *Cf. Gamez Lira v. Noem*, No. 25-cv-855, 2025 WL 2581710, at *3 (D.N.M. Sept. 5, 2025) ("At the very least, [the petitioner] justifiably expected that his DACA status would not terminate without notice and the opportunity to respond."). This fact dispute, alone, thus necessitates a hearing.

3

## 2. Prolonged Detention

But even assuming Respondents are correct on the facts, and Alves was only found to have a credible fear, but not granted CAT withholding, a hearing is still warranted on the issue of whether Alves' eight-month detention constitutes a due process violation. Under the INA, whether an individual is subject to immigration detention depends in part on the circumstances of their arrest. Section 1226 generally governs the process of arresting and detaining noncitizens who are already "present in the country," whereas § 1225 applies to "applicants for admission." 8 U.S.C. § 1225(a)(1), § 1226(a).

Under § 1226(a), the Attorney General may issue a warrant for the arrest and detention of a noncitizen already present in the country "pending a decision on whether the alien is to be removed from the United States." *Id.* § 1226(a). Once detained, the Attorney General "may continue to detain" the noncitizen or "may release" the noncitizen on bond or "conditional parole." *Id.* § 1226(a)(1)-(2).

Applicants for admission under § 1225 generally fall into two categories: (1) those subject to § 1225(b)(1), and (2) those subject to § 1225(b)(2). Both provisions authorize detention. Alves is covered by § 1225(b)(1), which ordinarily provides for expedited removal unless the individual "indicates either an intention to apply for asylum . . . or a fear of persecution," which triggers an asylum interview. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). If the asylum officer determines that a noncitizen has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii).

Respondents concede that Alves established her intent to apply for asylum based on political persecution and that an asylum officer found she had a credible fear of returning to

4

Brazil.  Notice to Appear 1 ("This notice is being issued after an asylum officer has found that [Alves] has demonstrated a credible fear of persecution or torture.").  Because she established a credible fear of persecution, the statute provides that she "shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii).

On these grounds, Respondents argue that the Court cannot entertain Alves' Petition because detention is statutorily mandated.  Resp. 5.  But even assuming the correctness of Respondents' interpretation of the statute, there remains the possibility that the statute could be applied to Alves in an unconstitutional manner.  *See Jennings*, 583 U.S. at 312.

Respondents contend that Alves is entitled to no more due process than the terms of the INA.  Resp. 6 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020)).  In *Thuraissigiam*, the Supreme Court rejected a noncitizen's due process claim, explaining that people detained at or near the border are treated as "applicants for admission" and are afforded "only those rights regarding admission that Congress has provided by statute."  591 U.S. at 140.  Although *Thuraissigiam* certainly limited the scope of due process claims available to "applicants for admission," the decision's sweeping statements must be read in context.  *See id.*

The noncitizen in *Thuraissigiam* was detained under § 1225, and an asylum officer determined that he did not sufficiently establish a credible fear, so he was placed in expedited removal proceedings.  *Id.* at 140.  He attempted to challenge this negative credible fear determination through a writ of habeas corpus, in which he requested a "new opportunity to apply for asylum and other applicable forms of relief."  *Id.* at 114–15.  In other words, Thuraissigiam challenged his denial of asylum, not his detention in immigration custody.  The Court centered its analysis on the scope of habeas relief, which permits challenges to detention, but cannot provide another "opportunity to remain lawfully in the United States."  *Id.* at 117–20.

5

For purposes of his application for admission, Thuraissigiam had already received his due process through the credible fear interview and was subject to immediate removal and deportation thereafter. It was in this context that the Court determined "an alien in [his] position has only those rights *regarding admission* that Congress has provided by statute." *Id.* at 140 (emphasis added). The Court did not address whether noncitizens mandatorily detained under § 1225(b) have a constitutional due process right to challenge their length of detention.

This reading is bolstered by another contemporaneous Supreme Court decision. In *Jennings*, the Court held the mandatory detention statutes, § 1225(b) and § 1226(a), did not impose a six-month detention limitation, nor did the statutes require periodic bond hearings. 583 U.S. at 297–301, 312. That is, at least as a matter of statutory construction. *See id.* But the Court expressly left open the constitutional due process question and remanded the case with instructions that the lower courts consider the constitutional issue in the first instance. *Id.* at 312 ("Consistent with our role as 'a court of review, not of first view'" "we do not reach" "respondents' constitutional arguments on their merits.") (citations omitted).

Thus, the Supreme Court has not addressed the viability of constitutional due process challenges to the length of mandatory immigration detention. And the circuits are split on the issue. The Third and Second Circuits have found that due process is implicated when mandatory detention becomes unreasonably prolonged, at least under § 1226. *See German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020); *Black v. Decker*, 103 F.4th 133, 138 (2d Cir. 2024). The Eighth Circuit has taken a different approach, reasoning that "the government can detain an alien for as long as deportation proceedings are still 'pending.'" *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024).

The Fifth Circuit has only nominally addressed this issue by way of an unpublished opinion.  In *Wekesa*, a divided panel found that "the district court did not err by denying Wekesa's § 2241 petition" because he failed to "meet the statutory requirements for release under Section 1226(c)(2)."  *Wekesa v. U.S. Attn'y*, No. 22-10260, 2022 WL 17175818, at *1 (5th Cir. Nov. 22, 2022).  Although the court fleetingly noted that Wekesa raised a due process challenge, it did not address that argument or the facts underlying the case in its brief order, and neither did the district court.  *Id.* at *2 n.1.  Judge Dennis dissented and noted that the Supreme Court's decision in *Jennings* expressly left open the question of whether the Constitution eventually entitles immigration detainees to some additional process, such as a bond hearing.  *Id.* In his view, "prolonged detention without a bond hearing implicates due process protections and must be analyzed further" because the Fifth Amendment protects "citizens and non-citizens alike."  *Id.* at *2 (citations omitted).

Because *Wekesa* is an unpublished opinion, it has no binding precedential value, and the Court considers it only to the extent it is persuasive on the force of its own reasoning.  5th Cir. L.R. 47.5; *see, e.g.*, *Pena v. Atascosa Cnty.*, No. 5:24-cv-199-JKP, 2025 WL 310144, at *9 n. 5 (W.D. Tex. Jan. 27, 2025) (declining to follow a Fifth Circuit decision because "an unpublished opinion . . . has no precedential value.").  The Court does not find the *Wekesa* opinion persuasive because it did not discuss the due process issue at all or provide sufficient facts from which the Court could discern the reasons for which it rejected the due process claim.  On the other hand, the Court finds Judge Dennis' dissent persuasive, especially in light of other persuasive authority from out of circuit.

For instance, the Third Circuit has held that mandatory detention under § 1226(c) eventually violates due process if it becomes unreasonable.  *German Santos*, 965 F.3d at 210–11.

In *German Santos*, a lawful permanent resident was detained as removable under § 1226(c) because he was convicted of possessing marijuana with intent to deliver. *Id.* at 206–07. He appealed his case to the Board of Immigration Appeals ("BIA"). *Id.* While awaiting the decision, he filed a habeas petition challenging his detention. *Id.* at 207. At the time of the court's decision, German Santos had been detained for two years and seven months without a bond hearing. *Id.* at 208.

The Third Circuit reasoned that "even after *Jennings*" a noncitizen detained under § 1226(c) could still challenge their detention under the Due Process Clause. *Id.* at 210. The court then explained that if detention becomes unreasonable, a hearing is required. *Id.* In determining reasonableness, it applied a non-exhaustive four-factor balancing test: (1) the duration of detention, (2) the likelihood of continued detention, (3) the reasons for the delay, and (4) whether the conditions of confinement differ meaningfully from criminal punishment. *Id.* at 211. If detention has become unreasonable, "the government must hold a bond hearing" where it must show by "clear and convincing evidence" that the detainee "would likely flee or pose a danger to the community if released." *Id.* at 214. The Court finds this decision persuasive for its detail and careful consideration of Supreme Court precedent.

Federal district courts grappling with the implications of *Thuraissigiam* and *Jennings* have also reached disparate conclusions. *Compare Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023) (finding *Thuraissigiam* does not foreclose the petitioner's constitutional challenge to mandatory detention under § 1225), *with Petgrave v. Aleman*, 529 F. Supp. 3d 665, 676–79 (S.D. Tex. 2021) (rejecting similar claim).

Given this conflicting authority, the Court finds a hearing is necessary to fully assess Alves' claim and available relief. *See* 28 U.S.C. § 2243. Accordingly, this matter is set for a

hearing, at which Alves and Respondents should be prepared to discuss whether Alves's prolonged detention comports with due process and address the reasonableness factors described in *German Santos*.

     **B.**    **Whether to Grant Interim Relief from Removal or Transfer**

Separately, Alves asks the Court to prevent her removal from the country or transfer from this jurisdiction during the pendency of the case. Pet. 15. Respondents do not directly address this request but argue that the Court lacks jurisdiction to hear Alves' claim. Resp. 3, 5. At this stage, it is unclear whether this Court has jurisdiction to provide the requested relief. But even if this Court ultimately lacks jurisdiction, it retains the authority to preserve the status quo until that determination is made. A federal court can always determine its own jurisdiction and may order a respondent to preserve the status quo to enable it to do so. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[T]he District Court had the power to preserve existing conditions while it was determining its own authority to grant injunctive relief."); *cf. Brownback v. King*, 592 U.S. 209, 218-19 (2021). This is especially true where the action temporarily enjoined by the Court, if allowed to take place, would destroy jurisdiction or moot the case. *See United States v. Shipp*, 203 U.S. 563, 573 (1906).

In recent weeks, courts across the country faced with immigration habeas petitions like this one have relied on similar authority to prevent the petitioner's removal from the country or transfer from the jurisdiction in which the petition is pending, until the petition can be fully considered. *See e.g.,* Order Concerning Service of Petition and Stay of Transfer or Removal, *Teixeira v. ICE Burlington*, No. 25-cv-11631 (D. Mass. June 5, 2025), ECF No. 5. Other courts have enjoined deportations pending consideration of immigration habeas petitions under the All Writs Act, 28 U.S.C. § 1651(a). *See Batooie v. Ceja*, No. 25-cv-2059, 2025 WL 1836695, at *2

(D. Col. July 3, 2025); Minute Order, *Castellon v. Kaiser*, No. 25-cv-968 (E.D. Cal. Aug. 6, 2025), ECF No. 4; Minute Order, *Hernandez v. Wofford*, No. 25-cv-986 (E.D. Cal. Aug. 11, 2025), ECF No. 6.  Still others have done so under Federal Rule of Civil Procedure 65.  *See, e.g.*, *Sepulveda Ayala v. Noem*, No. 25-cv-5185, 2025 WL 1207655, at *1–4 (W.D. Wash. Apr. 26, 2025).

The Court finds persuasive the decisions enjoining removal and transfer of petitioners under the Court's inherent power to preserve its ability to hear the case.  *See, e.g.*, Order Concerning Service of Petition and Stay of Transfer or Removal, *Teixeira v. ICE Burlington*, No. 25-cv-11631(D. Mass. June 5, 2025), ECF No. 5.  Although Alves, proceeding pro se, did not make a separate request for a temporary restraining order ("TRO"), she did ask the Court to order that she cannot be removed from the district or the country while her Petition is pending.  Pet. 14–15.  To ensure the Court's ability to meaningfully address Alves' claims on the merits, the Court finds this relief is appropriate.  Accordingly, Respondents may not transfer Alves out of the Western District of Texas or remove her from the country during the pendency of this Petition.

Again, this Order is issued under the Court's inherent authority to preserve and assess its own jurisdiction, not as a TRO, but to the extent a bond may be required, it is waived.  *See, e.g.*, *Sepulveda Ayala*, 2025 WL 1207655, at *4.

### III.    CONCLUSION

The Court **ORDERS** that this case is **SET** for a **HEARING** on **Monday, September 22, 2025, at 2:30 p.m.** in Courtroom 522, United States Courthouse, 525 Magoffin Ave., El Paso, Texas 79901.  Alves and Respondents' counsel should come to the hearing prepared to discuss the merits of this case and present any evidence.  Specifically, they should be prepared to present

evidence and argument as to the reasonableness of Alves' detention under these four factors: (1) the duration of detention, (2) the likelihood of continued detention, (3) the reasons for the delay, and (4) whether the conditions of confinement differ meaningfully from criminal punishment.

**IT IS FURTHER ORDERED** that Respondents must make all necessary arrangements for Petitioner's presence at the hearing. *See* 28 U.S.C. § 2243 ("[T]he person to whom the writ is directed shall be required to produce at the hearing the body of the person detained.").

**IT IS FURTHER ORDERED** that Respondents **SHALL NOT** (1) remove or deport Alves from the United States, or (2) transfer Alves to any facility outside the boundaries of the Western District of Texas, until the Court orders otherwise.

**SO ORDERED**.

**SIGNED this 12th day of September, 2025.**

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE